J-S84004-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ROGELIO ZALDIVAR PENA | : | |
| | : | |
| Appellant | : | No. 772 MDA 2017 |

Appeal from the PCRA Order January 14, 2016
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s):  CP-38-CR-0000942-2010

BEFORE:  SHOGAN, J., LAZARUS, J., and OTT, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED MARCH 21, 2018**

Appellant, Rogelio Zaldivar Pena, appeals from the order denying his petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  In addition, counsel has filed a petition seeking to withdraw representation.  We grant counsel's petition to withdraw and affirm the order of the PCRA court.

This Court previously summarized the facts of the case in Appellant's direct appeal, as follows:

> On May 12, 2010, a stabbing occurred in a parking lot at Aldi's food store in Lebanon City, Lebanon County, Pennsylvania. Prior to the stabbing, [Appellant] and the victim were arguing inside Aldi.  The[se] men left inside the store at approximately the same time.  There was an altercation in the parking lot. [Appellant] and the victim were seen grappling with each other in the Aldi parking lot before the victim was stabbed.  The victim was lying partially inside of [Appellant's] van door, and the body was on the ground.  A man was standing over top of the victim. A stream of blood was flowing from the victim's chest.

There were numerous witnesses that testified that after the stabbing [Appellant] came back into the store, and he was holding a bloody knife. There was testimony that [Appellant] said it was self-defense when he came back into the store. There was also testimony that [Appellant] stated that a person tried to rob him. [Appellant] left the store again, and eventually placed the knife on the ground outside. [Appellant] was taken into custody at the scene that day.

Johanna Morales (hereinafter "Morales") knew [Appellant] and the victim. The victim was like a father figure to Morales. [Appellant] and the victim knew each other. Morales had borrowed money from [Appellant] more than one time. [Appellant] would ask for his money back, and Morales would feel threatened. Morales told the victim about the problems she was having with [Appellant]. The night before the victim was killed, [Appellant] came by Morales' house. The next morning, [Appellant] came back to Morales' house. [Appellant] told the victim that Morales owed him money, and the victim told [Appellant] to leave her alone. Then, [Appellant] left. [Appellant] called Morales later. Morales agreed to go to Aldi's to pay him. Prior to going to Aldi, Morales went to lunch with the victim and her children. At lunch, Morales saw [Appellant]. When leaving lunch, [Appellant] gave Morales a note, which stated he would fight for her and "I am not scared to die for you." After lunch, Morales, the victim, and her children all went to Aldi's, and they saw [Appellant] there. Morales paid for the groceries of [Appellant] and for a friend of [Appellant's], Jose Ramos-Flores.

*Commonwealth v. Pena*, 100 A.3d 323, 1499 MDA 2013 (Pa. Super. March 28, 2014) (unpublished memorandum at 2–3) (internal citations omitted).

A jury convicted Appellant of third-degree murder, 18 Pa.C.S. § 2501, and aggravated assault, 18 Pa.C.S. § 2702. On February 28, 2011, the trial court sentenced Appellant to twenty to forty years in prison for homicide and held that the aggravated-assault conviction merged for sentencing purposes.

Appellant filed post-sentence motions, which the trial court denied. Appellant filed a timely notice of appeal, 1668 MDA 2011,[1] that this Court dismissed on February 8, 2012, for failure to file a brief. *Pena*, 1499 MDA 2013, unpublished memorandum at 3.

On February 6, 2013, Appellant, *pro se*, filed a PCRA petition. The PCRA court appointed counsel, who filed an amended petition on March 27, 2013. Following a hearing, the PCRA court reinstated Appellant's direct appeal rights *nunc pro tunc* on August 12, 2013. This Court affirmed the judgment of sentence on March 28, 2014, *Pena*, 1499 MDA 2013, and our Supreme Court denied Appellant's petition for allowance of appeal on November 14, 2014. *Commonwealth v. Pena*, 110 A.3d 997, 241 MAL 2014 (Pa. 2014).

Appellant, through counsel, filed a timely PCRA petition on July 16, 2015, which was treated as a first PCRA petition.[2] The PCRA court held a hearing on January 14, 2016. On January 15, 2016, the PCRA court denied PCRA relief. Thereafter, despite Appellant's alleged request, counsel failed

---

[1] The Commonwealth erroneously reports that Appellant failed to file a direct appeal. Commonwealth's Brief at 10.

[2] Because Appellant's first petition resulted in the restoration of his direct appeal rights, the July 16, 2015 petition was akin to a first PCRA petition. *See Commonwealth v. Turner*, 73 A.3d 1283, 1286 (Pa. Super. 2013) ("[W]hen a PCRA petitioner's direct appeal rights are reinstated *nunc pro tunc* in his first PCRA petition, a subsequent PCRA petition will be considered a first PCRA petition for timeliness purposes.").

to file an appeal from the denial of PCRA relief. Appellant then filed a motion to reinstate his appellate rights on May 4, 2016, which the PCRA court treated as a PCRA petition. The PCRA court appointed counsel on May 13, 2016, and directed counsel to file an amended PCRA petition. Counsel filed an amended petition on November 1, 2016, and the PCRA court scheduled a hearing for January 5, 2017, which was rescheduled to April 20, 2017. Following the hearing, the PCRA court reinstated Appellant's appellate rights *nunc pro tunc* on April 24, 2017. Order, 4/24/17. This appeal followed on May 1, 2017.

On May 12, 2017, Appellant filed a court-ordered statement pursuant to Pa.R.A.P. 1925(b). The PCRA court, rather than file a Rule 1925(a) opinion, noted on May 18, 2017, "[A]ll errors are addressed in our Opinion dated January 14, 2016, and we adhere to that analysis." Order, 5/18/17.[3]

PCRA counsel filed a petition to withdraw as counsel and a **Turner**/**Finley**[4] brief in this Court on September 26, 2017. On September 29, 2017, this Court ordered PCRA counsel to send a new letter

---

[3] The January 14, 2016 order is not an opinion; rather, it is an attachment of five pages of notes of testimony from the January 14, 2016 PCRA hearing. However, the page numbers of the attached pages do not comport with the pages of the notes of testimony. The January 14, 2016 order attaches pages 55 through 59, and the corresponding pages of the notes of testimony are pages 53 through 57. N.T., 1/14/16, at 53–57.

[4] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

to Appellant clarifying that Appellant has the immediate right to proceed *pro se* or through privately retained counsel, **Commonwealth v. Muzzy**, 141 A.3d 509 (Pa. Super. 2016), because counsel's prior letter indicated that Appellant could so proceed "if" this Court granted the request to withdraw. Order, 9/29/17. Counsel complied with our order.

Prior to addressing Appellant's claims on appeal, we must address counsel's petition to withdraw as counsel. When counsel seeks to withdraw representation in a collateral appeal, the following conditions must be met:

> Counsel petitioning to withdraw from PCRA representation must proceed ... under [**Turner** and **Finley** and] ... must review the case zealously. **Turner**/**Finley** counsel must then submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.
>
> Counsel must also send to the petitioner: (1) a copy of the "no merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.
>
> * * *
>
> [W]here counsel submits a petition and no-merit letter that ... satisfy the technical demands of **Turner**/**Finley**, the court— trial court or this Court—must then conduct its own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief.

**Commonwealth v. Doty**, 48 A.3d 451, 454 (Pa. Super. 2012) (citation omitted).

- 5 -

Here, counsel described the extent of his review, evaluated the issues, and concluded that the appeal is frivolous. Counsel has also listed issues relevant to this appeal and explained why, in his opinion, the issues are without merit. In addition, counsel has included the revised letter sent to Appellant containing a copy of his motion to withdraw and a statement advising Appellant of his right to proceed *pro se* or through privately-retained counsel. Thus, we conclude that counsel has substantially complied with the requirements necessary to withdraw as counsel. ***See Commonwealth v. Karanicolas***, 836 A.2d 940, 947 (Pa. Super. 2003) (holding that substantial compliance with the requirements to withdraw as counsel will satisfy the ***Turner***/***Finley*** criteria). We now independently review Appellant's claims to ascertain whether they entitle him to relief.[5]

Appellant raises the following issues in the ***Turner***/***Finley*** brief:

   A. Whether the PCRA Court erred in denying Appellant's PCRA Petition claiming ineffective assistance of counsel for failing to present the entirety of a recorded prison phone call involving the Appellant's statements?

   B. Whether the PCRA Court erred in denying Appellant's PCRA Petition claiming ineffective assistance of counsel for failing to present the entire Aldi surveillance video to establish the Appellant acted in self-defense?

   C. Whether the PCRA Court erred in denying Appellant's PCRA Petition claiming ineffective assistance of counsel when the Appellant informed counsel that the letter authored by the

_____

[5] We note that Appellant has not filed either a *pro se* brief or retained alternate counsel for this appeal.

Appellant in Spanish was not properly translated by a court-approved interpreter?

***Turner/Finley*** Brief at 5.

When reviewing the propriety of an order denying PCRA relief, we consider the record "in the light most favorable to the prevailing party at the PCRA level." ***Commonwealth v. Stultz***, 114 A.3d 865, 872 (Pa. Super. 2015) (quoting ***Commonwealth v. Henkel***, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*)). This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. ***Commonwealth v. Robinson***, 139 A.3d 178, 185 (Pa. 2016). The PCRA court's findings will not be disturbed unless there is no support for them in the certified record. ***Commonwealth v. Lippert***, 85 A.3d 1095, 1100 (Pa. Super. 2014).

All of Appellant's issues raised in this appeal assert the ineffective assistance of trial counsel. To plead and prove the ineffective assistance of counsel ("IAC"), a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act. ***Commonwealth v. Stewart***, 84 A.3d 701, 706 (Pa. Super. 2013) (*en banc*). A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any one of these prongs. ***Commonwealth v. Martin***, 5 A.3d 177, 183 (Pa. 2010). Counsel is presumed to have rendered effective assistance of counsel. ***Commonwealth v. Montalvo***, 114 A.3d 401, 410

(Pa. 2015). We have explained that trial counsel cannot be deemed ineffective for failing to pursue a meritless claim. ***Commonwealth v. Loner***, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*). "We need not analyze the prongs of an ineffectiveness claim in any particular order. Rather, we may discuss first any prong that an appellant cannot satisfy under the prevailing law and the applicable facts and circumstances of the case." ***Commonwealth v. Johnson***, 139 A.3d 1257, 1272 (Pa. 2016) (citing ***Commonwealth v. Albrecht***, 720 A.2d 693, 701 (Pa. 1998)).

Appellant's first issue alleges trial counsel's ineffectiveness in failing to present at trial the entirety of a recorded prison telephone call. ***Turner***/***Finley*** Brief at 15.[6] Appellant testified at the PCRA hearing that he wanted the entire telephone call played for the jury so that the jurors could recognize Appellant's voice. N.T., 1/14/16, at 41. Trial counsel testified that the telephone call in question was redacted to eliminate references to Appellant's prison account and his expressed need of adding additional funds to the account. *Id*. at 17.

In rejecting this issue, the PCRA court noted that at trial, trial counsel provided Appellant with "ample opportunity to explain the phone call in its

---

[6] Not only does the ***Turner***/***Finley*** brief switch between labeling the issues A–C in the statement of the questions and 1–3 in the body of the brief, the order of the issues presented in the two portions of the brief is altered. We address the issues consistently with their presentation in the statement of the questions presented.

totality." Order, 1/15/16, at 56; N.T., 1/14/16, at 55. Further, the PCRA court determined that counsel's trial strategy was "sound and legitimate." *Id*. We concur. Counsel's explanation for redacting a portion of the telephone call was reasonable trial strategy aimed at protecting Appellant from potential prejudice by jurors focusing on the fact that Appellant was in prison. "With regard to 'reasonable basis,' the PCRA court 'does not question whether there were other more logical courses of action which counsel could have pursued; rather, the court must examine whether counsel's decisions had any reasonable basis.'" *Commonwealth v. Mason*, 130 A.3d 601, 618 (Pa. 2015). Here, Appellant failed to show that trial counsel had no reasonable basis for his action, and thus, we reject this IAC claim. *See Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 783 (Pa. Super. 2015) (The appellant's failure to support his contention that his trial counsel had no reasonable basis for inaction results in rejection of the IAC claim).

Appellant next asserts the PCRA court erred in denying Appellant's IAC claim for failing to present the entire Aldi surveillance video to establish that Appellant acted in self-defense. *Turner*/*Finley* Brief at 14–15. Appellant testified at the PCRA hearing that there was video from inside the Aldi store that showed the victim threatening Appellant and counsel was ineffective for not showing the video to the jury. N.T., 1/14/16, at 35.

Defense counsel testified at the PCRA hearing that the entire defense "was to claim self-defense in the stabbing of [the victim]." N.T., 1/14/16, at 20. When asked about failing to present video from inside Aldi's to the jury, defense counsel extensively described the existing video and its presentation to the jury, making clear that the interaction described by Appellant was outside of the camera angle.

> [**Trial Counsel**:] **The interaction between [Appellant] and [the victim] did not appear on the video.** The Aldi video actually had four different camera locations. The top left was the entryway that showed the entrance from the exterior of the store, the lobby and then the entrance into the main store itself. Basically the glass box that was the entrance. The bottom left view, I believe it was bottom left, was actually the—a refrigerated cabinet or refrigerated or a cooler at the back.
>
> The interaction that [Appellant] had spoken of actually had taken place down further. And I believe per his testimony, as well as [the witness's] testimony, it took place in front of the ice cream cooler which was a different—which was a different type of cabinet refrigerated area.
>
> The other two views in the video and I may be reversing where they are, but it's four separate screens that you could look at each individually. One of which showed the rear loading door which was [of] little to no value whatsoever to anything. And the last one was the cash wrap area where on video you could see [Appellant] organizing his groceries and going through the checkout, organizing his groceries and then being followed from the store by [the victim].
>
> [**PCRA Counsel:** ] And given those four particular camera angles that depict or depicted the inside of the Aldi's, what was your rationale in not displaying to the jury essentially that entire video from the moment that [Appellant] and [the witness] arrive[]—we add to the mix that the victim in the case—to the point where both of them exit the store?

[**Trial Counsel:**]  **Actually the jury had the opportunity to view all of that**.  They viewed the entry of [Appellant] into the store.  They viewed the entry of then [a witness] and [the victim] whenever they arrived separately.  I don't believe that we were able to identify—there were actually two or three witnesses who had—who we had spoken to—had a private investigator speak with—who had indicated they were at the Aldi at the time, but we could not identify positively those individuals entering the store.

The jury also had the opportunity and saw the entirety of the waiting in line, the checkout, [the witness] going and paying, [Appellant] then organizing his groceries and then exiting the store.

The other two views would frankly have been just the same as watching a blank screen.  There was no evidentiary value one way or the other to those other screens.

[**PCRA Counsel:**]  To your knowledge, did the video at any point—regardless of the fact that the jury had the opportunity to look at this—did any of the videos based upon your preparation depict the victim besides—obviously did not depict this interaction where words were allegedly exchanged between the victim and [Appellant].  Were there any—was there any video available that would depict the victim's demeanor, physical demeanor prior to leaving the store or at the time that he was leaving the store?

[**Trial Counsel:**]  Absolutely.  And I'm sure you've reviewed the transcript and got to see in my closing that I placed great weight and great argument and—onto the you've seen the video.  You've seen [the victim] follow [Appellant] out the door.  The argument was [Appellant], never turns around, never pays him any mind.  Never engages in any interaction with him.  And [the victim] followed [Appellant] out the door 10 seconds later after standing off to the side waiting and watching.  And I don't know that I use the argument that he was stalking him, but this was clearly a man who was waiting for [Appellant] to leave the store.  And then you see him follow him out.

N.T., 1/14/16, at 6–9 (emphases added).  Thus, trial counsel testified that the jury was able to view the video inside the store in its entirety.

The PCRA court, in rejecting this claim, noted that the video inside the store was played in its entirety. The PCRA court stated:

> I watched it [the video] like the jury did. **My recollection is the entire interaction was played**. You might remember something different in your recollection of the interaction that perhaps you perceived the video didn't show. But I do not recall nor does the record recall anything where that video was edited, cut out. **The video was played in its entirety**. This jurist recalls seeing you along with the others at the checkout. Seeing him follow you out and then it obviously cuts out because there were no cameras outside of Aldi's.

Order, 1/15/16, at 57; N.T., 1/14/16, at 56 (emphases added). As counsel will not be deemed ineffective for failing to assert a baseless claim, *Commonwealth v. Sheppard*, 648 A.2d 563 (Pa. Super. 1994), we conclude the PCRA court did not err in denying relief on this basis.

Lastly, Appellant contends that trial counsel was ineffective for failing to correct a translation by a court-approved interpreter of a letter that Appellant wrote in Spanish, which was presented to the jury. *Turner/Finley* Brief at 17–18. This claim is based upon Appellant's testimony at the PCRA hearing wherein he asserted that the interpreter mistakenly used the word "he" twice, rather than using the word "you" in place of the second "he." N.T., 1/14/16, at 37.

We note that Appellant never clearly identified where in the letter the misinterpretation occurred. N.T., 1/14/16, at 37. Despite that ambiguity, the PCRA court was able to identify the portion of the letter, and it noted

that any misstatement was corrected prior to presentation. The court

stated:

> Unfortunately for [Appellant], what the jury heard, which was read to him[,] was exactly what he contended because that's what the record says. And I quote on page 122 starting at line 16 [of the trial testimony, N.T., 1/3–6/11] "that's why I told you in the store that **he** found what **you** found for him a fight with me."
>
> * * *
>
> The [c]ourt finds that that was corrected and inconsistent with what you're now saying and was the facts that the jury viewed. What you're now concocting—I don't know if it's concocting or misinterpreting, is your belief that they heard he because the translation letter might have said he. When in fact the evidence that the jury viewed was consistent in exactly with what you are now asserting should have been heard. So that can't be a cognizable PCRA [claim] on behalf of [trial counsel]. It was corrected prior to reading. So that PCRA claim is unfounded.

Order, 1/14/16, at 54; N.T., 1/14/16, at 54–55 (emphases added). In light

of the fact that any misstatement was corrected, this claim lacks arguable

merit. *Stewart*, 84 A.3d at 706.

We have concluded that Appellant's issues either lack arguable merit

or that trial counsel exhibited reasonable strategy at trial. Our independent

review of the record in light of the PCRA petition, as well as the contents of

counsel's motion to withdraw and *Turner*/*Finley* brief, compels our

agreement that the PCRA petition is meritless, and we permit counsel to

withdraw.

Petition to withdraw granted. Order affirmed.

- 13 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>03/21/2018</u>